DEWITT AND REARICK, INC., Bissell and Odom Development Corporation, Tony Attell and Ron Bissell, Relators,

v.

The Honorable Jack FERGUSON, Judge of County Court at Law Number Three, El Paso County, Texas, Respondent.

No. 08–85–00234–CV.

Court of Appeals of Texas, El Paso.

Nov. 6, 1985.

Rehearing Denied Dec. 4, 1985.

Larry Baskind, Brenda J. Norton, Diamond, Rash, Leslie & Smith, Ronald J. Stading, Stading & Stading, El Paso, Robert L. Wright, Shannon, Gracey, Ratliff & Miller, Fort Worth, for relators.

Jack Ferguson, Judge, County Court at Law, Number Three, El Paso, pro se.

Before STEPHEN F. PRESLAR, C.J., and OSBORN and SCHULTE, JJ.

## OPINION

OSBORN, Justice.

The Relators have filed a petition for writ of mandamus seeking to compel discovery concerning the basis upon which a prior suit was settled. We conditionally grant the writ.

## FACTS

Three sisters, Patsy Nell Ramsey, Billy Grace Cawley and Shirley Ann Brown, in 1981 offered for sale three tracts of land in El Paso's upper valley which they had inherited and owned as tenants in common. In 1983, two groups were interested in purchasing the sisters' land. Walter Passero and Patrick Wieland presented a real estate contract which Mrs. Ramsey signed, and Mrs. Brown also signed conditioned upon Mrs. Cawley signing the contract. Mrs. Cawley never signed. At about the same time, Tony Attel and Ron Bissell, representing DeWitt and Rearick, Inc., met with all three sisters and obtained all of their signatures on their own real estate contract.

Passero and Wieland sued the three sisters for specific performance. The sisters

paid $350,000.00 to settle that suit along with their attorney's fees of $77,000.00. In 1984, counsel for the sisters sent a demand letter to Attel and Bissell and DeWitt and Rearick, Inc. making demand for $430,-000.00 and asserting that they had violated the Texas Real Estate License Act and the Deceptive Trade Practices-Consumer Protection Act and that they had been negligent and breached fiduciary duties in obtaining the real estate contract from the sisters. The letter also said no further commissions would be paid and that the sisters would seek to recover the commissions previously paid. Attel and Bissell responded by filing suit for unpaid commissions. The sisters then filed a counterclaim and third party action seeking to recover $400,000.00 in actual damages, $200,000.00 in punitive damages, statutory penalties, attorney's fees and costs.

## DISCOVERY PROCEEDINGS

In subsequent discovery proceedings, counsel for Relators has attempted to determine the basis upon which the suit by Passero and Wieland was settled. The sisters have all testified that they settled upon advice of counsel. Mrs. Ramsey paid $225,000.00 and Mrs. Brown and Mrs. Cawley each paid $62,500.00. The sisters through their attorneys have rejected all efforts to learn the basis and theories upon which the settlement was made, claiming the attorney-client privilege and that the information sought is protected by the work-product rule. The Relators, after being unable to obtain the sought-after information in depositions, interrogatories and request for production of documents, briefs and memoranda, filed a motion to compel answers to interrogatories and to compel production of documents. The sisters then filed a motion for protective order. After a hearing, the trial court granted the motion for protective order, denied the Relators' motion and sustained the contentions made concerning the attorney-client privilege and the work-product rule.

## MANDAMUS

This original mandamus proceeding was then filed. By two points of error, Relators claim the trial court abused its discretion in denying discovery based upon the attorney-client privilege and the work-product rule.

## APPLICABLE RULES

Rule 166b provides for discovery through depositions, interrogatories and requests for production of documents. The Relators tried all three of these procedures. That same rule provides that a party cannot discover: 3a "the work product of an attorney" and 3e "any matter protected from disclosure by privilege."

Rule 503, Tex.R.Evid., provides for the lawyer-client privilege. Rule 503(b) states:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself * * * and his lawyer * * *.

Basically Rule 503 codifies the common-law rule and leaves unchanged the law of attorney-client privilege in Texas. Goode and Sharlot, Texas Rules of Evidence Handbook, Article V: Privileges, 20 Houston Law Review 273 at 282 (1983).

## ATTORNEY-CLIENT PRIVILEGE

■ Ray, 1 Texas Law of Evidence, sec. 421 (1980), in quoting from Professor Wigmore says:

The general principle embodying all its essentials has been well stated by a leading writer on the law of evidence thus: "Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived."

Clearly the statements and advice of the attorney are just as much protected as the communications of the client. *Harrell v.*

*Atlantic Refining Company,* 339 S.W.2d 548 (Tex.Civ.App.—Waco 1960, writ ref'd n.r.e.); Ray, *supra,* sec. 426.

## RELATORS' CONTENTIONS

The Relators do not urge that the privilege is not applicable, but they argue that it has been waived. It is contended that the sisters cannot sue to recover the $350,-000.00 paid in settlement of the suit against them, plus the attorneys' fees they paid in that case, and now say we did all of that "on advice of counsel" but we won't permit you to inquire into that "advice." Relators' position is the sisters can't "eat their cake and hide it too." Relators urge that the sisters were not required to seek relief from others for the money they paid in settlement, but having chosen to do so, they have waived their attorney-client privilege and must now make a full disclosure of the advice they received, the legal theories upon which settlement was recommended and the basis for the recommendation that $350,000.00 was a reasonable amount to pay based upon their potential liability and exposure for damages. They insist they have a right to know why Mrs. Cawley, who did not sign the Passero-Wieland contract, paid $62,500.00, why Mrs. Brown who did sign, but conditionally, paid the same amount and why Mrs. Ramsey, who signed unconditionally, paid $225,-000.00.

## SISTERS' CONTENTIONS

The sisters argue very forcefully that their privilege should not be lost where in every instance (depositions, interrogatories and motion to produce) they have claimed the privilege and nothing has been done to reflect an overt waiver of this valuable codified right. See Rule 511, Tex.R.Evid. They assert that the only issue on trial will be did the sisters act reasonably based upon the established facts which existed when the settlement was made. They have furnished the names of the experts (attorneys) whom they will call as witnesses to testify the settlement and amount paid were reasonable. Those attorneys, who are not the ones who originally represented the sisters and recommended settlement, have not been deposed as permitted by law.

## HOLDING

■ We believe the reasoning of the court in *Ginsberg v. Fifth Court of Appeals,* 686 S.W.2d 105 (Tex.1985) is applicable in this case. In that case, a party seeking to avoid the effect of a previously executed deed and attempting to avoid a plea of limitation claimed to have been under treatment by a psychiatrist at the time the deed was signed. When an attempt was made to gain access to the medical records relating to that treatment, the plaintiff claimed they were privileged. The court noted this was an offensive, rather than a defensive, use of the privilege and outside its intended scope. The court, quoting from *Pavlinko v. Yale-New Haven Hospital,* 192 Conn. 138, 470 A.2d 246 at 251 (1984), said:

> A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action.

*Also see: United States v. Woodall,* 438 F.2d 1317 (5th Cir.1970); *Computer Network Corporation v. Spohler,* 95 F.R.D. 500 (D.C.1982); *Hearn v. Rhay,* 68 F.R.D. 574 (E.D.Wash.1975); *United States v. Mierzwicki,* 500 F.Supp. 1331 (D.Md.1980); *United States v. Lipshy,* 492 F.Supp. 35 (N.D.Tex.1979). As the court noted in the *Ginsberg* opinion, these plaintiffs may be forced to elect to claim this privilege or abandon their claim. We conclude that if they pursue this claim they will have abandoned their privilege. Point of Error No. One is sustained.

## WORK PRODUCT

■ Although Rule 166b, sec. 3a, Tex.R. Civ.P., does provide an exemption for the work product of an attorney, that exemption is limited to the work in the suit in which discovery is sought. *Allen v. Humphreys,* 559 S.W.2d 798 (Tex.1977). The

exemption is not applicable in this case. Point of Error No. Two is sustained.

We anticipate that the Honorable Jack Ferguson, Judge of County Court at Law Number Three, El Paso County, will amend his prior order and direct that discovery be permitted in accordance with this opinion, and the writ will issue only upon his failure to do so.