**Ann McLAUGHLIN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**LUNDE TRUCK SALES, INC., Lunde Leasing, Inc., corporations, and Richard Lunde, an individual, Defendants.**

No. 86 C 20318.

United States District Court, N.D. Illinois, W.D.

April 14, 1989.

See also 714 F.Supp. 920.

Phyllis B. Dolinko, Office of the Sol., U.S. Dept. of Labor, Chicago, Ill., for plaintiff.

Roberta Holzwarth, Bradley Koch, Kim Casey, Holstrom & Green, Rockford, Ill., James R. Pirages, Thomas & Hinshaw, Culbertson, Rockford, Ill., for defendants.

## ORDER

ROSZKOWSKI, District Judge.

This action comes before the court on the defendants LUNDE TRUCK SALES, INC., LUNDE LEASING, INC., and RICHARD LUNDE's motion to quash Attorney Daniel T. Williams, Jr.'s deposition subpoena. In particular, the defendants request that paragraphs 1, 2, 3, and 4 of that portion of the deposition subpoena entitled "Documents to be Produced" be quashed. For reasons set forth below, the court denies the defendant's motion to quash the requested production of documents.

## BACKGROUND

The court will attempt to quickly review the events leading up to the instant motion. In September of 1986, pursuant to § 17 of the Fair Labor Standards Act, hereinafter referred to as "FLSA" or "Act", the Secretary of Labor brought suit to enjoin and restrain the defendants from violating §§ 6, 7, 11, 15(a)(2) and 15(a)(5) of the Act. Specifically, the plaintiff charges that the defendants have repeatedly violated the provisions of § 7 of the Act by paying employee wages at rates less than $3.35 per hour. The plaintiff additionally charges the defendants with violating § 7 and § 15(a)(2) of the Act for failing to pay overtime wages to employees. The plaintiff also asserts that the defendants have failed to keep and preserve adequate and accurate records of employees and their wages and hours and other conditions and practices of employment. Finally, the plaintiffs charge that the defendants, during the period since January 1, 1984, have repeatedly violated and are willfully violating the provisions of the Act; therefore, the defendants have become liable for an equal additional amount of liquidated damages pursuant to § 16(c) of the Act. Each defendant separately answered the plaintiff's charges and included within each answer the following affirmative defense:

> Defendant ... has *relied* in *good faith* on the opinions of the Department of Labor and its representatives that said ... wage payment practices were in compliance with the requirements of the Fair Labor Standards Act, as amended, 29 U.S.C. Section 201 *et seq.* and the plaintiff is *estopped,* accordingly, from claiming violations of the same.

(Lunde Truck Sales's Answer, p. 5; Lunde Leasing's Answer, p. 5; Richard Lunde's Answer, p. 5) (emphasis added).

Subsequent to the plaintiff's motion for summary judgment becoming fully briefed, the defendants asked for and were granted leave to file Attorney Daniel T. Williams's affidavit in opposition to the plaintiff's motion for summary judgment. In turn, the plaintiffs asked for and were granted leave to reopen discovery in order to depose Attorney Williams. The plaintiff subsequently issued a deposition subpoena to Mr. Williams included in which is the request for production of documents that is at issue today.

## DISCUSSION

Ostensibly to counteract the plaintiff's charge of "willful" violations of the FSLA, the defendants filed Attorney Williams's affidavit. In Attorney Williams's affidavit, Mr. Williams reviews portions of the Department of Labor's ("DOL") investigation of Lunde Truck Sales's employee practices during the years 1975–1976. In particular, Mr. Williams said:

> That the plaintiff, by and through its auditor, Timothy Tyzver, conducted an investigation of Lunde Truck Sales, Inc. with regard to overtime claims, and

Lunde's exemptions under certain provisions of the wage and hour statute.

That the Tyzver audit initially alleged over-time (sic) wages due to six employees, irrespective of the location of their actual work place.

That the allegations raised by Tyzver concerning four of the six individuals concern the propriety of claiming exemptions for those individuals, based on job description and duties, and whether said individuals were exempt as mechanics.

That Lunde Truck Sales conceded that certain individuals were not mechanics within the meaning of that exemption, and paid overtime; Lunde maintained the claim of exemptions for certain management personnel and service writers and refused to pay overtime claims.

Following Lunde's refusal to pay over-time (sic) claims, I heard nothing further from Mr. Tyzver, or any other representative of the Department of Labor, concerning the fact that the Department of Labor was, in any way, interested in pursuing the claims involving the two individuals for whom over-time (sic) compensation was refused; further, I was never advised by any representative for the Department of Labor that the foregoing claims on the two employees had been referred to the solicitor's office of the Department of Labor; ultimately, the file was closed without any further contact with the Department of Labor. I had been led to believe, by Tyzver, that no further action would be forthcoming in light of the cases and opinion letters I had raised.

(Williams affidavit, ¶¶ 3, 8, 9, 10, 11).

In response to this affidavit, the plaintiff subpoenaed Attorney Williams for deposition and requested various documents to be produced. In essence, these documents include any and all documents relating to any Department of Labor investigations of each of the defendants in the instant action, notes of oral communications and written opinions rendered to any of the defendants by Daniel T. Williams or his law firm relating to defendants' compliance with the Fair Labor Standards Act or potential liability for violations of the Fair Labor Standards Act, communications between or among any of the defendants and Daniel T. Williams or his law firm relating to the Fair Labor Standards Act, and any and all documents relating to the basis of the opinions of Daniel T. Williams or his law firm as to the merits of the Department of Labor's investigations of defendants in the instant civil action. (Deposition Subpoena for Attorney Williams, pp. 2–3).

The defendants balked at these document requests and asserted their attorney/client privilege. The defendants argue that their affirmative defense of good faith reliance (estoppel) does not waive their attorney/client privilege, because the defendants relied not on their attorney's representations but on the acts and representations and opinions of the Department of Labor. The plaintiffs, on the other hand, argue that the defendants are unfairly using the attorney/client privilege as both a shield and as a sword. In other words, the plaintiff argues that the defendants are revealing information from their attorney favorable to their "good faith reliance" defense and using the attorney/client privilege to "shield" other, perhaps unfavorable information from their attorney about their reliance or lack thereof on DOL actions. The plaintiffs surmise that through this affirmative use of the "good faith reliance" defense and the affidavit of Daniel T. Williams the defendants have essentially waived their attorney/client privilege as to the documents requested.

 Of primary importance in determining whether waiver has occurred is the concept of fairness. *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 929 (N.D.Cal.1976). In particular, the attorney/client privilege may not be manipulated to the advantage of the party asserting the privilege. *See Computer Network Corp. v. Spohler,* 95 F.R.D. 500, 502–03 (D.C.1982). In the instant case, the defendants argue that their good faith reliance or estoppel defense is not dependent on their actions or those of their counsel but only on the objective representations and opinions of the DOL. Therefore, the defen-

dants contend, there is no reason to discover the privileged material requested and no waiver is triggered.

■ In *Southwire Co. v. Essex Group, Inc.*, 570 F.Supp. 643 (N.D.Ill.1983), the defendant in this patent infringement suit asserted the defense of estoppel and argued that it relied solely upon "objective" factors (the plaintiff's non-action) in making a claim of estoppel. In an attempt to discover attorney/client privileged documents pertaining to the defendant's reliance on their attorney's advice as opposed to the plaintiff's non-action, the plaintiffs argued that the defendant waived its attorney/client privilege as to any documents that tend to show the defendant relied on its attorney's advice that the plaintiff's patent was invalid. The *Southwire* court allowed discovery of the privileged documents and rejected the defendants' "objective" factors argument with the following comment:

> Even were we to view Essex' [the defendant's] "objective" evidence as entitling it to an inference or prima facie showing of reliance, fairness dictates that Southwire [the plaintiff] be permitted to rebut the showing. The supposed "objective"—"subjective" dichotomy is in a way illusory. Essex' "objective" evidence, which may include proof of delay, unfulfilled threats of suit and the like, is merely evidence which permits a trier of fact to infer that Essex actually relied on those factors. (footnote deleted) If Southwire has evidence that Essex actually relied on something other than Southwire's actions or silence, that serves to undercut the inference that Essex seeks to have drawn from its "objective" evidence. In short, Essex asserts that it relied on Southwire's delay in building the four plants; Southwire says that Essex relied on something else. What Essex is arguing here is that Southwire is not entitled to prove what Essex actually relied on, even though the court should be entitled to infer actual reliance from Essex' own proof. The unfairness of Essex' position is manifest.

*Southwire Co.*, 570 F.Supp. at 649.

Additionally, in *United States v. Exxon*, 94 F.R.D. 246 (D.C.1981), the court explicitly rejected the argument that discovery concerning a "good faith reliance" on another party's actions should pertain only to the relied-upon party's actions. In that case the court stated:

> In both *Connell* [*v. Bernstein–Macauley, Inc.*, 407 F.Supp. 420 (S.D.N.Y. 1976)] and the instant case the purpose of discovery was to ascertain whether one party acted in reliance on the representations of the other party. Further, in both cases, the issue of good faith reliance was affirmatively pleaded by the party seeking to use the attorney/client privilege as a shield against discovery. *Connell* clearly rejected any suggestion that the question of reliance only implicates the actions and representations of the party seeking discovery; the court recognized that the determination of good faith reliance necessarily turns upon the subjective intention of the party claiming reliance and, therefore, demands investigation into attorney/client communications where such an intention would be manifested.

*Exxon*, 94 F.R.D. at 248; *cf. Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir.1987).

The defendants' defenses in *Southwire* and *Exxon*, and the defendants' defense in the instant case depend on whether the defendants relied upon a particular DOL representation or action. Consequently, the primary way to assess the validity of this reliance is to investigate attorney/client communications where the defendants' interpretations of DOL actions were established. *See Exxon*, 94 F.R.D. at 249. Indeed, the defendants have implicitly recognized this fact by injecting their former counsel's affidavit in support of their good faith defense. Not only does Attorney Williams's affidavit reveal the need to assess privileged material to determine the existence and nature of the defendant's reliance but also demonstrates the inequity of the defendants' assertion of privilege.

By voluntarily using their counsel's affidavit as proof of their good faith, the defendants imply that their interpretations of DOL actions are reflected in their counsel's

interpretation and understanding of DOL actions. More importantly, the defendants are attempting to control which of their counsel's interpretations are discoverable.

In *Southwire, supra,* the defendant also used its counsel's testimony to support a defense to the plaintiff's charge of willful patent infringement. The *Southwire* court found this fact interesting in light of the defendants' attempt to preclude further discovery of their counsel's opinions. The *Southwire* court held that "... unfairness is compounded by [the defendant's] admission, ..., that it relied (in part) on their patent advisors in building plots. In effect, the defendant is saying, 'we can say we relied on our lawyer, but you can't.'" *Southwire,* 570 F.Supp. at 649.

Similarly, by attempting to assert their attorney/client privilege, the defendants, in the instant case, seek to proffer "favorable" information regarding their understanding of FSLA compliance as evidenced by Attorney Williams's experiences. In turn, they seek to preclude discovery of other potential evidence of the defendants' understanding of FSLA compliance as evidenced by or through counsel. This result would grant a large advantage to the defendants and warrants, in the interest of equity, the waiver of the defendants' attorney/client privilege as to documents bearing upon the defendants' reliance on DOL actions, as manifested through their counsel.

Accordingly, for the reasons set forth above, the court finds that the defendants have waived their attorney/client privilege through the assertion of their affirmative defense of "good faith reliance" and Attorney Williams's affidavit. Therefore, the court denies the defendants' motion to quash. In the interest of protecting privileged information not relevant to the defendants' defense of "good faith reliance," the court will be available to review documents *in camera* in the event there is a question of relevancy as to a specific document or documents.